171144 Melissa Mays et al. v. Rick Snyder et al. Oral argument is to be 15 minutes to be shared by the plaintiffs and 15 minutes to be shared by the defendants. Mr. Zaccoli for the appellant. May it please the Court, Your Honor, Nick Zaccoli on behalf of the appellants in the Boler v. Earley matter. Mr. Bagenstos and I, Mr. Bagenstos on behalf of the Mays v. Snyder matter, have asked to reserve three minutes for rebuttal.  Thank you, Your Honor. And you've divided your time to six? Six minutes each, Your Honor. That's correct. Your Honor, the question before the Court today is whether the Safe Drinking Water Act preempts these constitutional claims where contaminated drinking water is a fact of the case. The answer is no for two reasons. First, the plaintiffs in these cases are using 1983 to enforce independent constitutional rights, totally distinct from the statutory rights created by the Safe Drinking Water Act. Second, the defendants have failed to carry their burden to prove through the plain language of the Act, its legislative history, or any other specific evidence that the Act shows that Congress intended to, as this Court said, abandon the rights and remedies of the Constitution. As the record makes clear, Your Honors, at page 1,223, the lower court's analysis was legally incorrect when it began with the assumption that the crux of the plaintiff's claims arise under the Safe Drinking Water Act and are thus preempted by it. The crux of the plaintiff's claims, in fact, however, are rights and liberties guaranteed by the United States Constitution. First, Your Honor, with regards to the National Sea Clambers doctrine, it is inapplicable to this case. At 2621 in National Sea Clambers, the issue before the Supreme Court was whether or not the two acts implied a private right of action independent of their citizen suit provisions. As this Court held in Communities for Equities 2, Sea Clambers is limited to claims brought under 1983 to enforce rights created by the Act itself. That rationale of this Court in Communities for Equities 2 was subsequently confirmed by the Supreme Court in Fitzgerald. As in Communities for Equities, Sea Clambers is inapplicable because these plaintiffs are not seeking to enforce rights created by the Act. Second, Your Honors, these constitutional claims are not virtually identical to the statutory claims under the Safe Drinking Water Act. As the Supreme Court said in Fitzgerald, the Court should not lightly assume that Congress intended to foreclose constitutional rights. Even if we agree with you that the Safe Drinking Water Act doesn't preempt, what is the detriment that the plaintiffs suffer if you proceed under the Safe Drinking Water Act? In other words, why is the constitutional claim a superior remedy? Thank you, Judge Donald. The question, I think respectfully, Your Honor, is not whether one is relatively superior to the other. It depends upon the need of the action at the time. I think the Court would agree with that. The question is, are the rights provided or created, more accurately, by the Safe Drinking Water Act the same rights that the Founders created in Article I, Section 10, for example, a right to be free of impairment for contract? And they're not. They're entirely different rights geared at entirely different parties based upon entirely different types of statutory claims. Your Honor, plainly, as this Court said in Lillard, C. Clammers does not on its face stand for the proposition that a federal statutory scheme can preempt independently existing constitutional rights which have contours distinct from the statutory claim. The question, as this Court held in Committees for Equities at 684, is whether Congress intended to abandon the rights and remedies of the Constitution. This Court adopted a two-part test. First, are the constitutional claims virtually identical to the statutory claims? Or do the Act's remedies indicate that Congress intended to preclude reliance upon 1983 constitutional claims? They do not, Your Honor. The defendants fail on both of those problems. Conceptually, that test has been stated with more particularity by the Supreme Court in Fitzgerald. Yes, Your Honor. So I would assume that you think that those two are comparable tests, right? Fitzgerald test and the Communities for Equity address the same thing. So in the words of the now-governing Supreme Court case, how would you analyze this case under Fitzgerald, and how would you distinguish it from Mattoon? Your Honor, if I could, and I know that we certainly are short on time, but I want to make sure I answer Your Honor's question precisely. With regards to Mattoon, the history was that this Court, Communities for Equity I, was subsequently remanded back under an order by the Supreme Court to consider in light of Rancho Palo Verde's, where this Court in Communities for Equity II said, again, we affirm for the same reasons. The First Circuit in Fitzgerald criticized this Court's holding and found it to be not persuasive. Then the Supreme Court took Fitzgerald and used the virtually identical rationale employed by this Court, which is look at the contours of the rights, look at the remedies. Are the two the same claims? And they're not, Your Honor. They're entirely different claims. For example, if we were to look only at the Article I, Section 10 claims, for example, the impairment of contract, it requires legislative action by a state actor to substantially impair a contract. It has to be a legitimate governmental purpose, and it has to be done reasonably. Those factors, Your Honor, were actually discussed by this Court, Welch v. Brown, where it found that, at least as a preliminary matter based upon the record, the Legislative Act portion of the test was satisfied by the actions of the emergency manager under then Public Act IV, now Public Act 436. Let me ask you something. Yes, Your Honor. Since your time is short, I would like to hear your argument on why Eleventh Amendment immunity has been waived, why you believe that, and what you would actually seek. Are you seeking prospective relief that would be qualified under Ex parte Young, or are you saying that the Eleventh Amendment immunity has completely been waived and we can proceed? Thank you, Your Honor. I see my time is up. If I could answer Your Honor's question. Thank you. So the answers are a little bit different depending on who we speak about. So if we could, let's start with the emergency managers who, as this Court's guidance in Welch shows, act with the power of the state's sovereign but are, in fact, agents of the city. And this Court, in the Perry v. Southeastern Boll Weevil case, Judge Cole certainly was on that panel, had a four-factor test where the Court pointed out that of the four factors in determining whether or not Eleventh immunity applies, the most important factor is the state's obligation to pay any judgment that would accrue. Under Public Act 436, the Financial Stability Act, at 141.1560, paragraph 5, litigation expenses and payments made in settlement of civil proceedings shall be paid by the local government. So put differently, Your Honor, with regards to the city, Eleventh Amendment immunity is not the question. With regards to the emergency managers, under this Court's test teaching in Perry, clearly they are not subject to Eleventh Amendment immunity. But to get back to Your Honor's question, with regards to— particularly in your complaint, the departments. Yes, Your Honor. And that's actually within the record at page 1046 and 1047. Two arguments. First, that by proceeding substantively in the litigation, the state has waived immunity. We cite, too, a case out of Puerto Rico, the Vieques case, whereby enacting— The First Circuit came back and suggested that those statements were dicta and didn't also suggest that those statements might be removed from the opinion? It was suggested, Your Honor, but I cited for the rationale, not for the precedential value. And that is that in this case, as I cited in the record, 146 and 147, the state enacted legislation specific to this crisis. And then, for reasons that certainly they can explain to Your Honor, joined in an opposition to a preliminary injunction brought in the Boulder case specific to the city. If it was indeed the case that it's Eleventh Amendment immunity and the state had no involvement, they not only opposed the briefing, but then submitted a joint statement of facts prepared by the state. In a footnote in that paper—I'm sorry, Your Honor, and I don't have the page, but I can get it for you for rebuttal. In the response to the preliminary injunction, the state argues that by enjoining the city of Flint from foreclosing on citizens' houses because they can't pay for water they can't use, that that would frustrate the state's ability to deliver relief. And I read that again this morning, Your Honor, and it struck me that that becomes almost a tacit concession. The state has an ongoing involvement in this process. We also can't ignore the reality, even based upon the very limited record that we have, that the city of Flint, as much as it may want to, sees collections, is frankly powerless. The state government holds the keys. They hold both the debt and, at least at the time of this discussion, the emergency manager powers. And as much as the city may like to stop collecting and stop foreclosing, they can't by virtue of state law. So certainly, Your Honor, there is an opportunity for prospective relief under Ex parte Young. Your Honor, with that, if I could, in closing. Yes. Thank you, Your Honor. Briefly, I would hope. Very briefly, Your Honor. Just to identify the contours between the two rights, if you look at the Safe Drinking Water Act, it applies to individuals, public and private, corporations, all levels of government, has no requirement for legislative action, does not cover small systems of less than 25 people, regardless of who owns the system, does not cover exempted systems. Article 1, Section 10 through 1983 applies only to state actors. It requires legislative action. Looking at the right, the right under the Safe Drinking Water Act is for a citizen to enforce the regulations of the 90 contaminated substances. The right under Article 1, Section 10 is a constitutional right, as this Court held in Welch, that the founders treated with grave significance a right to be free from state legislative action that substantially impairs a contract right without a significant and legitimate public purpose and when the impairment is unreasonable and necessary. Lastly, Your Honor, turning to the remedies, the remedies available under the Safe Drinking Water Act absolutely do not invent and attempt by Congress to preempt constitutional rights. First, the EPA's remedy is to reduce state grant funding for noncompliance. The state's remedy is to bring a parent's patriarch action for injunctive relief. The citizen's remedy is to bring an action for injunctive relief to enforce the act or to force the government to collect civil fines. The remedy, as this Court is certainly aware, under the 1983 Article 1, Section 10, is for contract damages, injunctive relief, and attorney's fees. For these reasons, Your Honor, the burden lies with the defendants to show that Congress invents an attempt to abandon constitutional rights. They cannot do that and this Court should remand this matter back to the District Court for further findings. Thank you. Thank you. Mr. Bagenstos? All right. Thank you, Your Honor. Under the District Court's holding, if a racist mayor were to make a decision to send dirty water to black neighborhoods but not white neighborhoods, there would be no Section 1983 remedy for that obvious equal protection violation. Indeed, there would be no federal remedy at all so long as the water complied with the technical requirements of the Safe Drinking Water Act. And I think that gets Judge Donald to the question Your Honor was asking, why does it matter? It matters because there might not be a remedy at all, right, if there is compliance with the SDWA, which contains a variety of technical regulations that everybody acknowledges do not cover all forms of known contaminants in the water, but also there would not be a compensatory remedy, which is what 1983 provides. Now, if what we were seeking to do here was to enforce the requirements of the Safe Drinking Water Act through 1983, that would be a problem for our case. That would walk us right into the Sea Clamor's analysis. But we are seeking here to enforce a longstanding, preexisting 1983 remedy for violations of the 14th Amendment. And I think, Judge Stranch, this gets to Your Honor's question. On the Fitzgerald analysis, right, what Fitzgerald specifically says about that is that the defendants will have to show that Congress affirmatively intended to foreclose that longstanding, preexisting remedy for a 1983 violation or for a constitutional violation. And the crucial consideration there, and the word the Court uses is crucial, the crucial consideration there is congressional intent. How do we determine congressional intent? Justice Alito's unanimous opinion for the Court says, look, if what you're trying to do is use 1983 to enforce a federal statute, then it's pretty probative of congressional intent that they set forth a particular procedure for enforcing that statute. But, he says, if what you're trying to do is enforce the Constitution, then if Congress adopted a statute that has rights and protections that are significantly different than the rights and protections under the Constitution, that is a strong reason to believe that Congress did not affirmatively intend to foreclose the constitutional remedy. And that's, Your Honors, what we have here. We have a statute that defendants can violate the Safe Drinking Water Act in many cases without violating the 14th Amendment, and defendants can violate the 14th Amendment in many cases even with regard to dirty water without violating the Safe Drinking Water Act. The statute is only tenuously related to constitutional rights. There may be overlap in particular cases, but the question is whether Congress meant for this statute to foreclose the remedy for violation of the 14th Amendment that's existed since 1871 when Congress adopted Section 1983. And here, we simply don't have that. There is simply no reason to believe that Congress thought that this law, which has only a tenuous relationship to constitutional rights, was meant to be the vehicle for enforcing federal rights to foreclose that remedy. And that's not just because the statute says nothing about constitutional rights, although it doesn't. That's not just because, as far as anyone can tell, in this litigation the legislative history doesn't even touch on constitutional rights, although that's true as well. It's because Congress adopted a statute that just has very different coverage than the Constitution. I would like to also respond, Judge Stranch, to Your Honor's question about the 11th Amendment, because an 11th Amendment argument was made in our case as well. So I want to be clear about the relief we're seeking. We are seeking damages against defendants in their individual capacities and damages against the city of Flint, none of which would implicate the 11th Amendment. As for our official capacity relief against Governor Snyder, what we are seeking is prospective relief, and it's relief that's prospective under the Millikin 2 case. What we are seeking is an order going forward for the state to fix private property, to provide compensatory education. By the way, compensatory education, of course, was the very subject of Millikin 2, the very thing the court in Millikin 2 said was okay, to provide medical monitoring and also to provide assessments of the criminal justice and juvenile justice consequences of the pollution that the people of the city of Flint experience. So we are not seeking retrospective monetary relief from the state treasury, so there is no 11th Amendment bar, Your Honor. I realize that this is not an issue that we have to deal with right now, but just for my interest, on the medical monitoring, how long a period will you seek to have the monitoring covered, assuming the court would grant that? To be honest with you, Your Honor, of course, we haven't gotten anywhere close to that far in the litigation, and I think a lot would depend on what the evidence showed about the length of the harm. There are harms from lead poisoning, for example, that are certainly lifelong. So I wouldn't say it would be six months of medical monitoring, but I think that's something that would really emerge in the litigation based on the proof in the case. So I think that is certainly true as well. I'm actually not certain that I have anything more that I want to say, unless Your Honors have any questions. I'd be happy to stand. It's never a problem if you want to, Shirley. I just wanted to make sure, Judge Donnelly, you may have a question, Your Honor. I was just checking notes here. I think you've already covered this, because I had the note here about why we should, why should we affirm the court and allow you to file this new claim under the SWD Civil Procedure, but I think you all have touched on that already. I'll get you on rebuttal if I come up with something. Okay. Thank you, Your Honor. Thank you very much. Apologize for my little... No, that's not a problem. We need longer tables. Mr. Cheesedove, Mr. Chief Judge, may it please the court. My name is Margaret Bentonhausen, and I'm here on behalf of the State Defendants. The Safe Drinking Water Act is the federal remedy that Congress fashioned to protect the nation's drinking water. This case presents two questions. What is the preclusion standard, and has it been met? I think this goes... I'm sorry? Have you met your burden? Correct. Have we met our burden? And I think we had a question actually from Judge Stranz regarding Fitzgerald and whether it's the same as the virtually identical test. The Supreme Court has never articulated a heightened standard for preclusion of constitutional claims, and it didn't in Fitzgerald. The Supreme Court was clear in all of its preclusion cases that primary emphasis is on the comprehensiveness of the remedial scheme. I want to step back, because when we examine a statutory claim, the first thing the law directs us to do is look at the words of the statute. So can you point anywhere in the Safe Drinking Water Act to language that would show congressional intent to preclude all other remedies, particularly constitutional remedies? I believe it's the comprehensiveness of the remedial... I understand that, but I think there's a preliminary question. You get to a comparison of these statutes, but the first thing you have to ask yourself is, what does the statute say? What did Congress intend? What do we see in the legislative history that evidences Congress's intent? So my first question to you is, what in the SDWA tells you that Congress intended to preclude... Well, we'll just cut to the chase, constitutional remedies. When you were talking about the implied preclusion test, it doesn't necessarily have to say explicitly what it precludes. However, I think what I... You won't get a dispute from me on that, but I have a preliminary question, because Smith is educational in that. The Supreme Court said in Smith we've got constitutional claims and we have statutory claims. And the reason... The key way that we determine preclusion in Smith is by looking at what Congress said or what the legislative history said. And there it was easy to find preclusion, because the legislative history and portions of the statute themselves said... This is in order to implement the constitutional rights of children in education. A clear example of how Congress can say, we are precluding other remedies. That's really the key early case that has both constitutional and statutory remedies in it. Let's assume for the time being that we can exclude the ones that have only statutory. Smith is instructive for you, so my question is, on the basis of Smith, what do you have in the SDWA, either in the language itself or the legislative history, that suggests the same thing, that constitutional remedies are precluded? The Safe Drinking Water Act is all about protecting water and public health, and that's what these constitutional claims are about, and that's what's in the Safe Drinking Water... Well, is an equal protection claim about safe drinking water if, in fact, what has happened is that some governmental entity has said... ..or could say, I'm going to take drinking water and I'm going to say, in this affluent community, we're going to treat the drinking water this way, and in this poor or racially distinct community, I'm going to treat it a different way. And let's assume, in that example, neither of those cases violate the Safe Drinking Water Act. We don't need to address that question in this case because... Well, you do if you're trying to create a blanket rule that says that the Safe Drinking Water Act is preclusive as to constitutional remedies. That's the very essence of the issue, isn't it? Well, in Smith, you had the Education of the Handicapped Act. You could have certainly had Education of the Handicapped Act for non-compliant educational services that were distributed unequally, but that didn't make the EHA non-preclusive. So that could have applied in Smith as well, but what Smith does tell us is that it is possible to preclude independently existing constitutional rights... When you... I'm sorry. When you started to answer Judge Stranch's question initially, you talked about the implied right of... with respect to the preemptive nature of the act as you read it. And if you say that it's implied, aren't you... I want to know, first of all, aren't you conceding that it's not expressly there? And if it's not expressly there, what language do you find in the history or in tandem with other acts that allows you to read in the position that you are asking us to adopt? The entire act is about protecting the nation's drinking water. That's what these claims are about. Take the bodily integrity claim. It is saying we have a bodily integrity right not to be exposed to... But just because it's about protecting the clean water, that doesn't in and of itself say that it eliminates other rights or protections of a constitutional nature that might be there, which might protect the same or prohibit the same conduct or activity. Sure, and I think what's causing the Court some concern is that the Safe Drinking Water Act doesn't talk about constitutional claims. We have not recognized fundamental rights to clean drinking water or to clean air. That is just not something we've recognized as a constitutional right. But in Judge Strange's last example, where she articulates an equal protection claim, if there is a denial of equal protection with respect to safe drinking water, wouldn't that be a constitutional claim? And even though it's not specifically talked about in the Clean Water Act, nothing about that act would necessarily get rid of that equal protection constitutional right, would it? I think the equal protection clause, when it comes to those types of claims, that's perhaps a closer question. And I think you have to look at what's being alleged. In this case, all that's being alleged is Flint provided its own residence with water that was basically violative of the Safe Drinking Water Act while the rest of Michigan didn't. That would basically make every... What are the racial demographics of Flint? I don't know the percentage. I mean, it is a majority of black residents. So when you have that kind of demographic, you can't escape that equal protection analysis, can you? I'm not sure what you mean by escape. Well, I'm saying it's, you know, Judge Strange gave you a hypothetical that talked about if the city provides clean drinking water to a more affluent, largely white community and contaminated a poor drinking water to a largely racially distinct community or a poor community, isn't there an equal protection claim? And it seems to be that that's pretty much what you have here looking at, or you can extrapolate that from Flint's racial demographics. And I was just making the distinction is that Flint didn't provide different water to different residents within its own water district. That entire district received the same water. So that was the distinction that I was making. But like I said, even if the equal protection claim is a closer call, the rest of the claims, I mean, the bodily integrity claim is putting another label on, you know, having a fundamental right to safe drinking water. And as the First Circuit said in Mattoon, that is a safe drinking water claim. And Congress has made it. How does Mattoon survive Fitzgerald? Fitzgerald makes very clear that there is a distinction between constitutional rights preclusion and statutory rights preclusion. And it makes good sense. We give statutory power to the legislature, and if they pass a statute and then they decide, you know, we want to change how that statute operates or we want to add or subtract remedies, then they who have been in charge of this may also be in charge of that. But the legislature is not in charge of constitutional rights. So if the legislature is going to take them away, there has to be evidence of intent. Fitzgerald clearly says that. And you draw it from more than one thing. Hence my question, what does the language of the statute say? Here we have a savings clause. We have no specific reference to constitutional rights. So that's one side. And then after we've looked at the statute, then we turn to comparators. And we say, all right, how does this remedy compare with that remedy? Can we assume that the legislature has affirmatively shown us that it intended to retract constitutional rights over which it is not in charge of creating by this piece of legislation in the 1983 context? Your opposing counsel has given you a number of examples that would show that there are disparate remedies here. So what is your response as to how you can hold on to Mattoon in light of Fitzgerald and this change standard? Sure, and there was quite a few things I wanted to respond to in there. I am bad about that. You can line them up and answer in your order. I mean, you were saying basically about precluding constitutional claims. I'm talking about remedies. We're talking about does Congress think unsafe drinking water should be addressed through the Safe Drinking Water Act or through 1983. I'm not talking about preclusion of the actual constitutional claim. I'm talking about which remedy did Congress. And I also want to make a quick comment about Fitzgerald. Fitzgerald did not adopt a virtually identical test. It said that you look primarily at the comprehensiveness of the scheme, and then you look to see if the rights and protections significantly diverge. And that is very different than virtually identical. Adopting a virtually identical, as well as the whole rule, it would almost all, you know, you'd never see constitutional. What's the best case that supports you? And I understand you have some more responses for Judge Strange. But what's the best case that supports your position? Or where should we look, either in the statute or in the legislative history, for the language that best supports or concretizes your position about the remedies that you just talked about? About it not being preclusive of rights? I mean, that is what we're talking about. Congress can provide a remedy. I mean, Congress can't do anything to the Constitution. It exists. But what they can do is enact remedies. And they can certainly decide. And this isn't Smith, actually. They can certainly decide, okay, we don't longer want that remedy for that constitutional right. We want this one. And what I hear you saying is that by them establishing those remedies, that it somehow extinguishes other rights and or remedies. And I don't think you mean to say that. It absolutely can. It can repeal other remedies. But in this case, did it do that? I believe that is our position, that it did, because the State Drinking Water Act is so comprehensive and is so specific. I mean, it's basically identical to the statutes that were found preclusive in Middlesex. And I understand that involved a statutory claim. But they went on about the comprehensiveness of the remedial scheme. I don't think the comprehensiveness of the State Drinking Water Act's remedial scheme is in question. It's really about whether it's comprehensive and whether under the Fitzgerald test it precludes these constitutional claims. And I do want to go back to Judge Shannon. You commented on the savings clause. And I know Judge Levy's opinion was submitted to you guys. And I just wanted to make the quick comment because I know I'm way out of time. But she read the end of that savings clause and any other relief to preserve constitutional claims. But if you read it that broadly, it makes the rest of the clause superfluous. I mean, what it says is that it reserves statutory claims and common law. That is what that preserves. And that's exactly how these claims, I mean, I think going back, I'm sorry. The difficulty, I think, for you is that the savings clause may not independently solve this problem. But the savings clause is one thing to be considered. It's almost a totality of the circumstances when you're looking at a comparison between a statutory preclusion and constitutional remedy preclusion. You're looking at all the things. What does the statute do? How is it remedial? How comprehensive is it? Does it have a whistleblower or does it not? All of those are the things you look to. But the savings clause is also one because that's an indication that Congress was saying there are other remedies out there, and we are going to protect those other remedies. So I guess I would get back to my concern that Mattoon can no longer carry the day for you since it is distinct enough from Fitzgerald. And I guess I would try to give you a honed question to give me your best response as to why Mattoon survives. I think Mattoon survives because it does follow Fitzgerald. It puts primary emphasis on the comprehensiveness of the remedial scheme. And then it notes that, I mean, we don't have a ton of, it doesn't develop the constitutional preclusion claim in Mattoon, but when you're looking at the rights and protections of the safe drinking water, I mean, we have two things that we looked at with the rights and protections primarily. Are we covering all the same defendants? And, you know, under the 1983 claims, we're talking about public defendants. Well, and under the Safe Drinking Water Act, we do have a few private defendants, but not very many. It's a minuscule number. So we almost have all the same defendants. And then when you're talking about the liability standard, well, the Safe Drinking Water Act, you just have to violate it. We're not going to require any other showing. So I don't think the liability standard really makes it that significantly different. So I don't think they significantly diverge. Does it make a difference because the constitutional claims protect you against intentionally discriminatory claims? I think that, and I think that it goes back to Smith, is that even if you have certain requirements under, I mean, I think the Safe Drinking Water Act could do that, too. I mean, the bottom line is if you're violating the act, then the Safe Drinking Water Act is going to cover it. It doesn't, you know, you don't have to even prove the intent. It applies. Well, don't you think that under your argument, if Congress passes a generally comprehensive statute to address some portion of a problem, which in some ways Safe Drinking Water does because there are a huge number of contaminants that are not included in that statute or in the regulatory environment that results from it, it seems to me that if your test applies, any time Congress passes a substantially comprehensive statute in a certain area, someone else is going to stand before us and make the same argument, and that means that all your constitutional rights are gone. And I find that concerning. What is your response? Well, I think there were, you know, I think that can go both ways. I mean, there were over 2,000, you know, Safe Drinking Water Act violations in Michigan just last year. Are all of them constitutional claims? I mean, where do we draw the line? Up until this point, we have not recognized environmental constitutional rights, and I think this is what we're being invited to do through these claims, particularly the bodily integrity claim. That is a claim for a fundamental right in safe drinking water. It's labeled differently, but I don't think the label is controlling. So that. Counsel, thank you very much for your. Thank you very much, Your Honor. Appreciate it. Appreciate it. I'll try not to drop anything. That's not a problem. May it please the Court. Assistant City Attorney William Kim here on behalf of the city defendants. The issue in this case, and this case is really about safe drinking water and whether the plaintiffs can bypass Congress's carefully constructed remedial scheme by artfully pleading a constitutional claim under 1983. They should not be allowed to do so for three reasons here, Your Honor. First, the Safe Drinking Water Act is a comprehensive remedial scheme, and this is not something that the plaintiffs are contesting here. They are essentially, they are arguing that it doesn't matter, but they are not arguing that the Safe Drinking Water Act is not itself a comprehensive remedial scheme. Second, as a result of that, this case is more factually analogous to the situation that was presented in Smith v. Robinson as opposed to Fitzgerald v. Barnspool School Commission because in Smith v. Robinson, the education of the Handicapped Act was a comprehensive remedial scheme where. Wasn't one of the key distinctions in that case the fact that the legislative history in the act itself specifically said we are implementing this to take care of the actual enforcement of constitutional rights. That was one factor that the court identified. How clear could Congress be? I mean, what we're seeking is congressional intent, and they just told us. Well, I think in Smith, the Supreme Court first looked at the remedial scheme that was in the education of the Handicapped Act and noticed that it was a comprehensive scheme providing for direct judicial review, a judicial cause of action, and it was sufficiently comprehensive that the court could imply a preclusion of constitutional claims under 1983. What they did in Fitzgerald was they built on that basis and said, okay, for constitutional claims, we can also compare the rights and protections under the statute and the Constitution. And if there are significant divergences in those rights and protections, that may be indicative of a lack of congressional intent. It's not phrased in a mandatory fashion or in a specific controlling fashion. It's phrased in a this is an additional factor that can be considered once the initial assessment of whether or not the statute is a comprehensive remedial scheme has been conducted. You're briefing draws a distinction with Stilwell from the Ninth Circuit, which finds that claims were not precluded. Explain to me how you think that is – I think your wording is that the Ninth Circuit's conclusion is suspect because it conflates rights and protections under the Constitution with 1983 remedies. I'm not clear on that. Can you explain why Stilwell is not good law? Well, we look at Stilwell where the Ninth Circuit, as you're quoting, compared 1983 and the AEDP. Sorry, I can't remember the – AEDP. Yes. So they were comparing two statutes. But that's not what the Supreme Court told us to do in Fitzgerald. What the Supreme Court told us to do in Fitzgerald was to compare the rights and protections under the Constitution. 42 U.S.C. 1983 is merely a vehicle that provides an avenue by which constitutional rights can be vindicated. It doesn't create the substantive rights itself. That's a well-known, well-established portion of the 1983 claim is that they don't – it doesn't create the rights itself. So this court has asked several questions of my colleagues about the differences in the remedies. And the remedies themselves are largely immaterial here. The question is whether the rights themselves can be vindicated under – that could be vindicated under 1983 if there's a significant divergence between the rights that can be vindicated under the Safe Drinking Water Act. And as Ms. Bettenhausen said, the claims that arise under the 1982 Clean Water, the fact that they – the fact that the Safe Drinking Water Act is a comprehensive remedial scheme indicates that Congress intended that the Safe Drinking Water Act would be the sole source of remedies for claims of that nature. But the legislative history doesn't say sole source. And, you know, in Fitzgerald, the court admonished that we should be mindful to not lightly conclude that Congress intended to preclude reliance on Section 1983 as a remedy for, among other things, equal protection. And since we don't have any language that you can point to – I mean, you do tell us it's a comprehensive statute, but it seems to me that your interpretation would encourage us to not engage in that mindful exercise that Fitzgerald encouraged us to do. We don't have much to anchor it in. You tell us that there's been preemption, but I'm not sure that we have found the language that really roots that. Well, I think the language that roots that is really the purpose of the essentially the provision of safe drinking water. So if the constitutional claims – and this is what the district court found – was that the constitutional claims that they brought had at their crux the provision of Safe Drinking Water Act – of Safe Drinking Water. To broach a hypothetical, I mean, if a plaintiff were to bring a claim that involved the provision of drinking water that didn't implicate the safety provisions of it and it was outside of the scope of the Safe Drinking Water Act, I don't know if I could argue that such claims were precluded. But when the plaintiffs bring claims that inherently and intrinsically include the provision of safe drinking water, they've brought claims that fall within the ambit of the Safe Drinking Water Act, and they cannot bring those claims under 1983. One other thing that I wanted to raise was that the plaintiffs have, in both the Mays and the Bowlers Clay case, argue that the Supreme Court essentially adopted this court's previous decisions in Communities for Equity and Charvat. And that's quite simply not the case. Well, you would concede that our circuit was on the winning side, wouldn't you? I would argue that the Supreme Court reached the same conclusion that this court had reached in those cases, however, it did so using a different methodology and manner of analysis. As Ms. Bettenhausen. But one that much of you all, both of you all have argued before us, one that satisfies Fitzgerald. Excuse me, I'm not sure if I understand, Your Honor. You said that they created a different test of their own, and that's what we've been discussing today. Correct, Your Honor. And the Fitzgerald test begins by, and even they, if you look, if you read how the Supreme Court reached its decision in Fitzgerald, you see that the Supreme Court first looked at Title IX and did its assessment of whether or not Title IX was a comprehensive remedial scheme. And it concluded first just solely on the statute that it was not, because Title IX had no express cause of action. It had only an implied cause of action. And it found that this implied cause of action was insufficient to indicate that Congress had intended to preclude 1983. It then compared the rights and protections and noticed that there were significant divergences because persons that would have been constitutionally liable under 1983 were not being held liable under Title IX, that the standards of proof were different. And it took these secondary observations and used them to support its initial conclusion based on the lack of comprehensiveness in Title IX that 1983 claims were not precluded by Title IX. Here we have the Safe Drinking Water Act, which is a comprehensive remedial scheme. It provides a direct judicial cause, a private cause of action for plaintiffs. And it provides not just that, but it also provides judicial review of the decisions by the EPA, the standards that are set, what standards are set. All of that is subject to judicial review through privately initiated causes of action. You will need to wind up pretty quickly. Right. Absolutely, Your Honor. To conclude, Your Honor, I would just ask that the Court affirm the decision of the District Court because whatever divergences exist are not significant enough to warrant overturning congressional intent that can be inferred because of the comprehensive nature of the Safe Drinking Water Act remedial scheme. Thank you, Mr. Kemp. I appreciate it. Thank you, Your Honor. Just a few very quick points in rebuttal. I think the dominant theme of the defendant's portion of the argument is the defendants are trying to pull a mechanical and rigid test out of what the Supreme Court has said is really just a common sense inquiry. So there's no mechanical rigid test that says whenever there's a comprehensive remedial scheme, you can't use 1983. We know that from this Court's own cases involving the use of 1983 to enforce the 14th Amendment in public sector employment, notwithstanding Title VII, which has as comprehensive a remedial scheme as there is. And that is a body of case law that predated Fitzgerald but that this Court has reaffirmed since Fitzgerald. The question is a common sense one. It's what was Congress trying to do when it passed this law. That's the first thing that the Court says in Fitzgerald, right? The Court says the crucial question is congressional intent. And before the Court gets to the application section that Mr. Kim talked about, the Court talks about, well, what are the considerations? How do we go through this analysis? Well, when a plaintiff is seeking to enforce a statute through 1983, the comprehensiveness of the remedial regime is pretty important because it shows Congress didn't mean to use some other means to enforce the same statute. But when we're looking at constitutional rights, what we're looking at is a comparison of the rights and protections under the Constitution with those under the statute. Here they're very different. Defendants say this is a case about clean water. This is a case about clean water, but that's not the question. What the defendants say is that what you're really trying to do is to go back and constitutionalize a right to clean drinking water. Why are you not trying to do that? What shows us that? Yes, for a couple of reasons. First of all, as Your Honors discussed, the equal protection claim, there's nothing in any of our claims depends on a right to clean drinking water. Let me just be clear about that, a constitutional right. The equal protection claims, what they're about is intentional discrimination. It could be intentional discrimination through water. It could be intentional discrimination through something that has nothing to do with the environment whatsoever. So there's nothing in that that cuts. I'm going to say that there's no showing of a violation of equal protection because there was no effort by the city or anyone else to treat people differently, that everybody get bad water. Yes. Your Honor, we're, of course, at the motion to dismiss stage here. If you look at our complaint, I think it's paragraphs 52 to 64 of our complaint that what we allege is that actors from the city, from the county, and from the state, and, of course, the emergency manager who sorted the city and sorted the state, all got together and made this interim plan to use Flint River water for Flint, but to continue to use clean Lake Huron water for the surrounding predominantly white areas of Genesee County. And we allege that that's based on intentional discrimination. We also allege that the non-responsiveness to citizen complaints for 18 months after the switchover, and, in fact, the suppression of water to the public of the harms caused by Flint River water was a separate equal protection violation because had this occurred in a different city that was not a majority black, not a predominantly poorer city, the state would have responded and defendants would have responded differently. There's also, of course, a substantive due process claim here, and that substantive due process claim, there are two substantive due process claims. They do not depend on a fundamental right to clean water. Water is the means by which the violation occurred. But what we are alleging is that defendants knew that the water they were using was harmful. It could have been water. It could have been air. It could have been something that wasn't environmental at all. The crucial point is they knew that this was harmful, and they acted with a sufficiently culpable mental state. And I want to suggest Ms. Bettenhausen's suggestion that that means every Safe Drinking Water Act claim becomes constitutional is simply false. First of all, we couldn't have deliberate indifference in every case, but also, I mean, if you look at the Safe Drinking Water Act regulations, right, there are a lot of regulations that the aim is to protect clean water, but it would be really difficult to say there's constitutional significance to going, you know, one part per billion over the maximum contaminant level line, right, which is what it would take really to constitutionalize all Safe Drinking Water Act claims. There are lots of cases where there's a violation of the Safe Drinking Water Act without a violation of the Constitution. And because, as many of your honors have pointed out, there are lots of the Safe Drinking Water Act regulations don't reach all known contaminants. The NRDC's amicus brief is really good on this, pages 14 to 15. Because of that, there are lots of situations where you could have a constitutional violation with no violation of the Safe Drinking Water Act. So the question is, again, that common sense question, right, the common sense question of what was Congress trying to do when it passed the Safe Drinking Water Act? Did it really mean to try to take away the longstanding, preexisting 1983 remedy for violation of the 14th Amendment like it did in the Education for the Handicapped Act when we see throughout the legislative history lots of discussion of the Constitution? No. We have none of that discussion here. And we also have a statute that just has very different coverage. And under Fitzgerald, which we all acknowledge is controlling law here, under Fitzgerald, that's really conclusive for us. And with that, your honors, we will submit. Okay. Thank you, counsel. Thank you. We really do appreciate your arguments this afternoon. Very helpful to us as we work on this very important case.